# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 10-351V
Filed: January 9, 2015
For Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MADISON TURKUPOLIS, * | |
| * | |
| Petitioner, * | Attorneys' fees and costs decision; |
| * | Excessive or unreasonable fees; |
| v. * | Overstaffing; Expert fees |
| * | |
| SECRETARY OF HEALTH * | |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Ronald C. Homer</u>, Boston, MA, for petitioner.
<u>Voris E. Johnson</u>, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On May 30, 2014, the undersigned issued a dismissal decision in this case, finding that petitioner failed to prove causation in fact by a preponderance of the evidence. On September 19, 2014, petitioner filed an application for attorneys' fees and costs, requesting $102,784.51. Petitioner filed two supplemental applications for attorneys' fees and costs, requesting an additional $11,255.90. Petitioner thus seeks a total of $114,040.41 for attorneys' fees and costs. Respondent has raised objections to certain aspects of petitioner's fee applications.

For the reasons set forth below, the undersigned awards petitioner $97,896.98 in reimbursement for fees and costs.

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

**PROCEDURAL HISTORY**

On June 7, 2010, petitioner's mother, Jill Turkupolis, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2006) ("Vaccine Act"), alleging that her daughter, Madison, suffered unspecified neurological injuries as a result of the human papillomavirus ("HPV") vaccination she received on September 10, 2007. Pet. at 1. On November 4, 2010, petitioner filed an amended petition alleging unspecified neurological injuries with detailed descriptions of the contents of medical records.

Madison was a minor at the time her mother filed the petition and amended petition. Madison reached the age of majority on December 2, 2012. On December 3, 2012, petitioner moved to amend the caption to reflect that Madison was now the petitioner in this case, and the motion was granted.

Special Master Zane held a hearing in this case on April 24, 2012, and a supplemental hearing on December 13, 2012. The parties filed simultaneous post-hearing briefs on May 24, 2013, and simultaneous responsive briefs on August 2, 2013. On September 23, 2013, this case was transferred to the undersigned. Petitioner filed additional medical literature on October 24, 2013, and a supplemental expert report on April 4, 2014. Respondent chose not to file a supplemental expert report. On May 30, 2014, the undersigned issued a dismissal decision, finding that petitioner failed to prove causation in fact by a preponderance of the evidence.

On September 19, 2014, petitioner filed an application for attorneys' fees and costs, requesting $82,297.40 in attorneys' fees, $20,137.11 in attorneys' costs, and $350.00 in petitioner's costs. Respondent filed an opposition to petitioner's fee application on October 6, 2014, objecting to certain aspects of petitioner's fee application as excessive and/or unreasonable. Petitioner filed a reply to respondent's opposition on October 24, 2014, arguing that none of the fees or costs requested is excessive. Petitioner also filed a supplemental application for attorneys' fees, requesting $1,242.50 in reimbursement for fees incurred for reviewing respondent's opposition and drafting and filing the reply.

On November 3, 2014, respondent filed a sur-reply in support of her opposition to the initial fee application and to object to certain aspects of petitioner's supplemental fee application. Petitioner filed a sur-response on December 12, 2014. On December 15, 2014, petitioner filed a second supplemental application for attorneys' fees and costs, requesting $9,513.40 in attorneys' fees and $500.00 in attorneys' costs. Respondent filed a second sur-reply on December 30, 2014, objecting to petitioner's second supplemental fee application.

This matter is now ripe for adjudication.

**DISCUSSION**

I.  **Entitlement to Fees and Costs Under the Vaccine Act**

Under the Vaccine Act, a special master or a judge on the Court of Federal Claims may

2

award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules. It has, however, been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011). In determining reasonable basis, the court looks "'not at the likelihood of success [of a claim] but more to the feasibility of the claim.'" Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9. Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013).

Respondent does not contest that the petition was filed in good faith or that the proceedings were supported by a reasonable basis. The undersigned finds that the petition was filed in good faith and supported by a reasonable basis throughout the proceedings. Thus, petitioner is eligible for an award of reasonable attorneys' fees and costs.

## II.     Reasonableness of Requested Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act, which involves a two-step process. Avera v. Sec'y of HHS, 515 F.3d 1343, 1347 (Fed. Cir. 2008). First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348.

Petitioner requests reimbursement for fees and costs incurred by the law firm of Conway, Homer & Chin-Caplan, P.C. ("CHCC") of Boston, Massachusetts, as well as costs she incurred herself.

### A. Reasonable Attorneys' Fees

Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who

performed the task. See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008). Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

      **1. Time Billed by a Law Clerk to Prepare the Amended Petition and Affidavit**

A law clerk billed 35.7 hours at an hourly rate of $134 to draft and to revise the amended petition and petitioner's affidavit in this case. Fee App. at 10–12 (entries dated 10/8/2010 – 11/3/2010). The amended petition is 17 pages long, and the affidavit is 5 pages long. Both are double-spaced.

Respondent contends that this is an excessive amount of time, given that a paralegal had already spent 15 hours summarizing medical records, and the amended petition and affidavit consist mostly of legal boilerplate and block quotations from the medical records. Respondent asserts that the law clerk should have spent only 10 hours on these tasks.

In response, petitioner argues that the 35.7 hours a second-year law student spent to draft these pleadings was reasonable. Petitioner contends that since a less-experienced law clerk bills at a lower rate than an attorney, this justifies the additional time it takes for a law clerk to complete a task. Petitioner explains that it took the law clerk 35.7 hours to draft and revise the pleadings because she had to verify medical records and add other citations that may not have been in the paralegal's medical record summary.

The undersigned does not fault petitioner's counsel for utilizing law clerks or paralegals to perform tasks that might otherwise be performed by an attorney, who would bill at a higher rate. However, the undersigned agrees with respondent that 35.7 hours is an unreasonable amount of time to spend drafting an amended petition and affidavit. Certainly, reviewing medical records and checking their accuracy, even with the assistance of a medical record summary, can take significant time. However, the undersigned finds that 15 hours, at most, is a reasonable amount of time to spend drafting the amended petition and affidavit. See, e.g., Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *13 (Fed. Cl. Spec. Mstr. Jan. 13, 2013) (in which CHCC requested fees of about $6,500 for 42 hours of work drafting an affidavit and petition, and Special Master Vowell reduced the requested amount by $4,000). **The undersigned accordingly reduces petitioner's fees by $2,773.80** (20.7 hours at $134 per hour).

### 2. Unnecessary Time Billed by Additional Attorneys in the Initial Fee Application

Respondent also objects to multiple attorneys billing time on this case. The invoice of CHCC billing entries in the initial fee application reflects fees charged for work performed by seven attorneys (including three partners), one law clerk, and one or more paralegals.[2] Respondent does not object to fees billed by the primary attorneys on the case, Sylvia Chin-Caplan and Christina Ciampolillo.[3] Specifically, respondent objects to time billed by Kevin Conway (6.3 hours), Ron Homer (7.9 hours), Amy Fashano (3.2 hours), Joseph Pepper (0.2 hours), and Meredith Daniels (6.3 hours), totaling $6,085.60. Opp. at 5. Respondent contends that this case was relatively uncomplicated and could have been handled by only Ms. Chin-Caplan and Ms. Ciampolillo. Respondent argues that the firm's consistent practice of using multiple attorneys on every case is unnecessary and results in inefficiencies and duplicated effort. Id. at 4.

Petitioner contends that the time additional attorneys spent on the case was necessary, reasonable, and not duplicative. Petitioner argues that, in order to keep a case moving in a timely fashion, it is necessary for other attorneys to assist, even if they are not the primary attorney on the case. Reply at 6–7. Petitioner also defends time additional attorneys spent editing pleadings. Petitioner goes on in her reply to defend each attorney's billings in turn.

The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on one case. CHCC often employs such a business model, but special masters have also reduced fees for other attorneys and firms. See Sabella, 86 Fed. Cl. at 214–15 (affirming the special master's reduction of fees for overstaffing where three attorneys from two different firms worked on a case together); Austin, 2013 WL 659574, at *14 (Special Master Vowell deducted $500 for excessive interoffice communication in a case where seven attorneys at CHCC billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of HHS, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (the undersigned reduced CHCC's fees for intra-office communications and meetings); Carcamo v. Sec'y of HHS, No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (the undersigned reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings with a client).

In this case, CHCC billed for multiple attorneys to meet to discuss the case, edit routine pleadings, perform multiple reviews of the same filings or medical records, and communicate with the client. The undersigned will address each of these billing categories in turn.

---

[2] It is unclear from the billing summary whether the paralegal billings reflect work from four different paralegals, or one or more paralegals charging different rates for different years. Fee App. at 40. This is of no consequence, as it does not affect the undersigned's analysis.

[3] Although Mr. Homer is listed as attorney of record, Ms. Chin-Caplan represented petitioner at both hearings, and Ms. Daniels represented petitioner in several status conferences. Ms. Chin-Caplan's and Ms. Ciampolillo's billings also constitute the majority of attorney billings on the case.

5

CHCC billed for many conferences or case meetings among firm employees, but respondent objects only to the meetings involving attorneys other than Ms. Chin-Caplan and Ms. Ciampolillo. Ms. Chin-Caplan and Ms. Ciampolillo each billed 5.5 hours in case meetings with each other. In addition, Mr. Homer, Ms. Fashano, Ms. Daniels, and Mr. Conway billed for case meetings. Overall, attorneys at CHCC billed approximately 15 hours for case meetings among attorneys. This number does not account for case meetings between attorneys and paralegals, which also make up a not insignificant portion of petitioner's fee application. The undersigned finds these case meetings excessive and unreasonable. Case meetings were needed only because the case was overstaffed—the involvement of additional attorneys in a case necessitates additional time familiarizing each new attorney with the case. **The undersigned thus reduces petitioner's fee by $3,559.50** (approximately 75% of the fees requested for these meetings).[4]

In addition to the time Ms. Ciampolillo and Ms. Chin-Caplan spent drafting and editing pleadings, CHCC billed 3.5 hours ($1,150.50) for other attorneys (Mr. Conway, Ms. Fashano, Ms. Daniels, and Mr. Pepper) to edit pleadings. Roughly 25% of this time was devoted to editing routine, primarily boilerplate pleadings, such as motions for enlargement of time or status reports. It is unreasonable for the main attorney on a case to draft a routine pleading, and then have another attorney, who is unfamiliar with the case, bill time to review the routine pleading. Surely the attorney on the case is capable of reviewing her own routine pleadings for typographical errors or other mistakes. **The undersigned reduces petitioner's fees by $287.63** (25% of the fees requested for editing pleadings).

Mr. Homer billed time to review every electronic filing notification and to note each filing in the firm's case file. Specifically, he billed 0.1 hour, or six minutes, to review every filing. This pattern is consistent whether the filing was a one-paragraph Notice of Assignment (on June 9, 2010, Fee App. at 6) or a 16-page Rule 4(c) Report (on January 29, 2011, Fee App. at 15). Petitioner defends this time, stating in her reply that during Mr. Homer's review of the orders and filings, he also set tasks for each attorney and tracked deadlines. Mr. Homer's review was clearly duplicative, however, as several other attorneys billed for reviewing the same deadlines and court orders. For example, on September 9, 2010, Ms. Ciampolillo billed for drafting a memorandum to Mr. Homer regarding deadlines. Fee App. at 9. On November 27, 2012, Ms. Chin-Caplan billed to review a court filing Mr. Homer also billed to review. Id. at 28. Such duplicative billings are seen throughout the fee invoice. The undersigned doubts Mr. Homer actually spent the same time reviewing a one-page order as a sixteen-page document. Even if he did, many of Mr. Homer's billings are unnecessary and duplicative. **The undersigned reduces petitioner's fees by $1,855.50** (75% of the fees requested for Mr. Homer's work).

Respondent also objects to time billed by attorneys other than Ms. Ciampolillo and Ms. Chin-Caplan on additional tasks.

In addition to billing for conferences and editing pleadings, Mr. Conway billed time for drafting a reply. He also billed time to review the case while preparing to draft the reply. Fee App. at 36. Petitioner asserts Mr. Conway drafted the reply due to the workload of the main

---

[4] To reach this figure, the undersigned reduced the requested hours (15) by 75% and multiplied the reduced number of hours (11.25) by the average attorney billing rate ($316.40).

attorneys on the case. It is true that if Mr. Conway had not drafted the reply, one of the main attorneys would have done so and billed for that time. However, an attorney already familiar with the case would not need to bill time to review the case before drafting such a pleading. This billing is indeed the result of overstaffing. **The undersigned reduces petitioner's fees by $353** (one hour at Mr. Conway's billing rate) **for this duplicative review.**

Ms. Fashano handled the initial intake of the petition, which included conducting a preliminary review of some medical records and interviewing petitioner and her mother. Fee App. at 4. This was duplicative in part, as the subsequent attorney on the case, Ms. Ciampolillo, also had to spend time reviewing the medical records. Id. at 6. **The undersigned reduces petitioner's fees by $208** (one hour at Ms. Fashano's billing rate).

Ms. Daniels billed time for drafting a Motion to Stay the Proceedings and communicating with petitioner. Fee App. at 14–15, 17. Petitioner states Ms. Daniels' billings for communicating with the petitioner are justified because Ms. Daniels served as point of contact on the case while she was a law clerk and continued to serve as point of contact once she became an attorney at the firm. This results in Ms. Daniels billing time for receiving communication from petitioner and forwarding it to Ms. Ciampolillo, who then also billed for reviewing the communication. Fee App. at 17 (duplicative billings on October 3, 2011). A more effective use of attorney time would have been for Ms. Daniels to inform petitioner that Ms. Ciampolillo should be petitioner's point of contact. **The undersigned reduces petitioner's fees by $60** (the 0.3 hours Ms. Daniels spent communicating with petitioner) **for these duplicative tasks.**

### 3. Petitioner's Supplemental Fee Requests

#### i. Petitioner's First Supplemental Fee Application

In her first supplemental fee application, petitioner requests $1,242.50 in attorneys' fees, consisting of 5.3 hours billed by attorneys in preparing petitioner's reply (filed on October 8, 2014).

In her sur-reply, respondent requests that the undersigned reduce petitioner's first supplemental fee request by three-fourths ($931.88), as approximately three-fourths of petitioner's reply defends time billed by the law clerk and by attorneys not primarily responsible for the case. Respondent contends that since the undersigned has previously criticized CHCC for such practices in prior decisions in other cases, it was unreasonable for petitioner to spend this time defending the same practices.

The undersigned is not bound by her prior decisions, prior decisions of other special masters, or even prior decisions of U.S. Court of Federal Claims judges. Hanlon v. Sec'y of HHS, 40 Fed. Cl. 625, 630 (Fed. Cl. 1998). While perhaps not the most efficient use of judicial resources, petitioner is free to raise arguments that have previously and even consistently been rejected. The undersigned will not reduce petitioner's supplemental fees for time billed in defending CHCC's fee practices.

The law does require, however, that petitioner's counsel not bill for duplicative tasks.

7

Petitioner's first supplemental fee application contains some of the same duplicative billing practices as her initial fee application. For example, Mr. Homer again billed for reviewing each CM/ECF filing, and Ms. Ciampolillo and Mr. Homer both billed 0.2 hours for a case meeting. **For these duplicative practices, the undersigned reduces petitioner's fees by $296** (1 hour at the average attorney billing rate).

### ii. Petitioner's Second Supplemental Fee Application

In her second supplemental fee application, petitioner requests $10,013.40 in attorneys' fees and costs. This amount consists of $500 in costs for Mr. Robert R. Altman, as well as $9,513.40 in attorneys' fees for 42.2 hours spent preparing the sur-reply (filed December 12, 2014), filings related to the sur-reply, and the supplemental fee application.

Respondent contends that petitioner's second supplemental application should be denied in toto. She contends that the only new information presented in petitioner's sur-response pertains to the affidavit from Mr. Altman, which she argues is unnecessary and not particularly helpful since Mr. Altman is unfamiliar with the Vaccine Program and lacks a medical degree.

The undersigned finds petitioner's second supplemental fee application grossly excessive. As with the first supplemental fee application, the second supplemental application contains many of the same duplicative billing practices as the initial fee application. CHCC billed over 7 hours for case meetings. Mr. Homer, Mr. Conway, and Ms. Ciampolillo all billed for reviewing the same pleadings and case documents. Mr. Conway and Mr. Pepper both billed for editing Ms. Ciampolillo's drafts. **The undersigned reduces petitioner's fees by $4,000 for duplicative meetings, editing, and review.**

CHCC also billed excessive time for other tasks. Ms. Ciampolillo and a law clerk billed over 10 hours for case research. Mr. Homer and Mr. Conway billed over $1,500 for preparing a 5-page motion to strike and preparing for a status conference related to the motion to strike. This conference was over in less than 10 minutes, as the undersigned granted petitioner's motion to strike shortly before the conference. **The undersigned reduces petitioner's fees by $2,000 for excessive time spent on research and the motion to strike.**

In addition, petitioner's sur-response is duplicative. Petitioner repeats many of the arguments already raised in her reply, particularly the arguments in defense of the hours billed by the law clerk and the hours billed by multiple attorneys. The only new substantive argument presented in petitioner's sur-response relates to Dr. Blitshteyn's fee rate. This section takes up about two pages of the sur-response. It cites only one case and relies on Mr. Altman's affidavit. **The undersigned reduces petitioner's fees by $750 for drafting the mostly duplicative sur-response.**

### B. Reasonable Attorneys' Costs

Attorneys' costs must be reasonable as well. See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for

reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."). Expert fees are generally determined by multiplying a reasonable hourly rate by a reasonable number of hours.

Relevant factors used to determine reasonable expert fees include: the expert's education, training, and experience; the expert's academic affiliations, publications, board certifications, and area of expertise; the nature, quality, and complexity of the information provided; the expert's experience in the Vaccine Program; the expert's efficient use of time in the case; the prevailing market rates for comparable experts; the cost of living in the expert's geographic area; the rates traditionally charged by comparable experts in the Program; and any other factor likely to assist the special master. Simon v. Sec'y of HHS, No. 05-941V, 2008 WL 623833, at *3–*4 (Fed. Cl. Spec. Mstr. Feb. 21, 2008); see also Baker v. Sec'y of HHS, No. 99–653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 25, 2005).

### Dr. Blitshteyn's Expert Fees

Petitioner's expert, Svetlana Blitshteyn, M.D., seeks $16,700.00 for work on this case, consisting of 41.75 hours of work at a rate of $400 per hour. Fee App. at 38–39, 66, 81, 98, 100. The undersigned is unaware of any previous case addressing Dr. Blitshteyn's fee rate. Thus, it is necessary to use the above-mentioned factors to analyze the reasonableness of her requested rate.

Dr. Blitshteyn is a clinical assistant professor at State University of New York at Buffalo School of Medicine and Biomedical Sciences, and a director and founder of Amherst Neurology, P.C. in Williamsville, New York. Ex. 28, at 2. She specializes in general neurology, autonomic disorders, and headache medicine. Id. She received her M.D. from State University of New York School of Medicine and Biomedical Sciences in 2002, and received her board certification from the American Board of Psychiatry and Neurology in 2010. Id. She completed her neurology residency at the Mayo School of Graduate Medical Education. Id. She received her B.S. in biochemistry from State University of New York at Buffalo, graduating as the valedictorian of her class. Id. Twenty-five percent of her medical practice involves adolescent patients. Transcript at 28. She has published eleven articles in peer-reviewed publications, three of which are on the topic of autonomic disorders. Ex. 28, at 2; Transcript at 29.

Respondent objects to Dr. Blitshteyn's hourly rate of $400, contending that her "relatively light credentials" and unpersuasive opinion merit only a $300 rate. Respondent analogizes to Barclay v. Sec'y of HHS, No. 07-605V, 2014 WL 2925245 (Fed. Cl. Spec. Mstr. Feb. 7, 2014), in which a pediatric neurologist with several more years of practical experience and a "similar" publication record received a $325 hourly rate.

The doctor respondent refers to from Barclay is Dr. Corbier, a pediatric neurologist in Charlotte, North Carolina, who requested a $400 rate and was awarded a $325 rate. Id. at *8. Dr. Corbier received his board-certification with a special qualification in child neurology in 2002. Id. In the Barclay decision, Special Master Moran noted that Dr. Corbier had "conducted very little research and his publications are self-published books, which were not peer-reviewed." Id. Special Master Moran also noted that Dr. Corbier did not have a special expertise in genetics (an issue in the case), nor did his professional duties focus on teaching

9

medical students.  Id.

In her reply and sur-response, petitioner defends Dr. Blitshteyn's requested rate of $400. Petitioner points to Dr. Blitshteyn's prestigious Mayo Clinic residency, undergraduate academic record, and special competence in the specific vaccine injury alleged.  Petitioner further notes that Dr. Blitshteyn's research and clinical practice both focus on autonomic dysfunction. Petitioner also highlights Dr. Blitshteyn's efficiency in this case, demonstrated by her billing only 41.75 hours for preparing two expert reports and testifying at two days of hearing.

With her sur-response, petitioner provided a declaration from Robert R. Altman.  Mr. Altman is president of Medical Consultant Services, Inc., a consulting group that provides medical and technical experts for liability claim processing and litigation support.  Ex. 51, at 1. He has been involved with recruiting medical experts for 25 years.  Id.; Ex. 52.  Mr. Altman states that Dr. Blitshteyn's $400 hourly rate is "a reasonable rate for an expert with her credentials, experience, sub-specialty, and geographic location."  Ex. 51, at 3.  He states that her qualifications in the area of autonomic disorders appear to be more pronounced than other neurologists in her area.  Id.  He notes that she attended highly rated academic institutions and practices with reputable groups.  Id.  He states that expert neurologists in Dr. Blitshteyn's geographical area charge hourly rates ranging from $375 to $600.  Id.  For example, Dr. William Kingston is a neurologist in Canandaigua, New York (82 miles from where Dr. Blitshteyn practices) who charges $400 an hour.  Id.; See Ex. 51, Tab B, Curriculum Vitae for Dr. William J. Kingston.  Dr. Kingston specializes in neuromuscular diseases.  Ex. 51, Tab B.  Mr. Altman states that Dr. Kingston has practiced longer than Dr. Blitshteyn, but his experience working with autonomic disorders "pales in comparison" to Dr. Blitshteyn's.  Ex. 51, at 3.

Respondent contends that Mr. Altman's affidavit is unhelpful because Mr. Altman does not have a medical degree and does not have any experience in the Vaccine Program.  However, the fact that Mr. Altman does not have a medical degree does not reflect on his ability to evaluate a doctor's fee rate.  Most special masters, judges, or respondent's counsel do not have medical degrees, but they routinely evaluate expert fee rates in the Vaccine Program.  Nor does Mr. Altman's inexperience with the Vaccine Program make his affidavit irrelevant.  Mr. Altman's affidavit provides new and relevant information, as it refers to the rates of neurologists in Dr. Blitshteyn's geographic area and evaluates Dr. Blitshteyn's academic credentials and practical experiences.

The undersigned finds that Dr. Blitshteyn's credentials, experience, sub-specialty, and geographic location merit a $400 rate.  While Dr. Blitshteyn has been board-certified for only four years, her publication record and academic experience are more substantial than Dr. Corbier's and thus merit a higher rate.  Additional factors to consider are that Dr. Blitshteyn has a research specialty and practical experience in the issue of this case—autonomic disorders and headaches—and that she used her time quite efficiently, billing only 41.75 hours.  Based on the evidence presented and the undersigned's experience in the Vaccine Program, the undersigned finds that $400 is a reasonable hourly rate for Dr. Blitshteyn.

# CONCLUSION

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, the undersigned awards petitioner the following amount for attorneys' fees and costs:

<u>Initial Fee Application:</u>
| | |
|---|---|
| Requested Attorneys' Fees: | $82,297.40 |
| Reductions: | $9,097.43 |
| Attorneys' Fees Awarded: | **$73,199.97** |
| | |
| Requested Attorneys' Costs: | $20,137.11 |
| Reductions: | $0.00 |
| Attorneys' Costs Awarded: | **$20,137.11** |
| | |
| Requested Petitioner's Costs: | $350.00 |
| Reductions: | $0.00 |
| Petitioner's Costs Awarded: | **$350.00** |
| | |
| Attorneys' Fees & Costs Awarded: | **$93,337.08** |
| Petitioner's Costs Awarded: | **$350.00** |

<u>First Supplemental Fee Application:</u>
| | |
|---|---|
| Requested Attorneys' Fees: | $1,242.50 |
| Reductions: | $296.00 |
| Attorneys' Fees Awarded: | **$946.50** |

<u>Second Supplemental Fee Application:</u>
| | |
|---|---|
| Requested Attorneys' Fees: | $9,513.40 |
| Reductions: | $6,750.00 |
| Attorneys' Fees Awarded: | **$2,763.40** |
| | |
| Requested Attorneys' Costs: | $500.00 |
| Reductions: | $0.00 |
| Attorneys' Costs Awarded: | **$500.00** |
| | |
| Attorneys' Fees & Costs Awarded: | **$3,263.40** |

| | |
|---|---|
| <u>Total Requested Fees & Costs:</u> | $114,040.41 |
| <u>Total Fees & Costs Awarded:</u> | **$97,896.98** |

**Accordingly, the court awards:**

a. **$97,546.98**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and Conway, Homer & Chin-Caplan in the amount of **$97,546.98**; and

11

b. **$350.00**, representing petitioner's costs.  The award shall be in the form of a check made payable to petitioner for **$350.00.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED.**

Dated: January 9, 2015 /s/ Laura D. Millman
Laura D. Millman
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.